CASTEL, U.S.D.J.
Defendant David Bergstein moved to quash a grand jury subpoena issued to his accounting and tax advisory firm Gaynor & Umanoff, LLP ("Gaynor") for materials relating to Bergstein's tax returns for 2008 through 2016 (the "Gaynor Subpoena"). (Dkts. 176, 177, 186 Ex. 1). Bergstein contends that the Gaynor Subpoena represents a prosecutorial misuse of a grand jury subpoena to obtain evidence for use at his trial set to begin on February 5, 2018. He also asserts the attorney-client privilege and work product privilege. For the reasons set forth below, the Court orders the adjournment of the return date for the Gaynor Subpoena until no earlier than fourteen days after the discharge of the jury in Bergstein's trial and orders the government to make an ex parte sealed submission by January 15, 2018 on its use of grand jury subpoenas since October 1, 2017.
BACKGROUND
On November 7, 2016, the grand jury's sealed indictment was filed charging Bergstein and one other individual with, among other crimes, conspiracy to commit investment advisor fraud and securities fraud. (Dkt. 1), More than a year later, on December 5, 2017, the grand jury issued the Gaynor Subpoena, requiring Gaynor to produce materials by December 19, 2017, six days after service. (Dkt. 186 ¶ 3; Dkt.
*582 186 Ex. 1). Although Gaynor requested a thirty-day extension for its response, the government extended the deadline until January 5, 2018, an approximately two week extension. (Dkt. 186 ¶ 4). The government also asked the Court to decide this motion by January 5, 2018. (Dkt. 180 at 2).
Trial of this action is set to commence February 5, 2018, and the government opposed Bergstein's recent request for a continuance, which the Court denied. (Dkts. 184, 185, 187, 194). The government represents that an active grand jury investigation into "other conduct and actors has been proceeding in parallel fashion for some time." (Dkt. 180).
The Court denied Bergstein's prior two motions to quash grand jury subpoenas directed to (i) his former civil counsel and (ii) a law firm that represented several entities related to Bergstein. (Dkts. 142, 190). Bergstein filed the instant motion to quash the Gaynor Subpoena on December 21, 2017. (Dkt. 176). The government filed its opposition and ex parte sealed submission on December 27, 2017. (Dkt. 180). Bergstein replied on January 4, 2018. (Dkt. 191).
DISCUSSION
I. Misuse of the Grand Jury Process to Prepare for Trial in an Already Indicted Case.
The parties dispute whether the government is improperly using the grand jury process to gather evidence for trial through the Gaynor Subpoena. Bergstein argues that the timing of the Gaynor Subpoena supports a finding of improper purpose. He also points to the government's motion in limine to admit into evidence "Bergstein's federal tax returns during the charged conspiracy ... as direct evidence of Bergstein's charged crimes or, in the alternative, pursuant to Federal Rule of Evidence 404(b)." (Dkt. 172 at 14). Bergstein highlights the overlap between the dates of transactions which form part of the charges in the indictment and the years covered by the subpoenaed materials. (Dkt. 177 at 3). In response, the government has asserted in an ex parte , sealed submission that the grand jury issued the subpoena as part of an active and ongoing investigation. Further, the government claims that they seek to reduce interference with and delay of the grand jury investigation, particularly considering that this is Bergstein's third motion to quash a grand jury subpoena.
The principles of law relating to the improper use of grand jury process for the sole or dominating purpose of preparing for trial in an already indicted case are addressed in this Court's October 10, 2017 Memorandum and Order (the "Memorandum and Order") (Dkt. 142) and its January 3, 2018 Order (the "Order") (Dkt. 190). The Second Circuit has noted that "[t]he timing of [a] subpoena casts significant light on its purposes," In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Robert M. Simels, Esq.) (Simels ), 767 F.2d 26, 29 (2d Cir. 1985). The Circuit has further observed that in cases of "clear violations" of the rule regarding misusing the grand jury process to prepare for trial, courts have "often been reluctant to go beyond a simple rebuke." Id. at 30. However, the Circuit determined that the facts at issue in Simels warranted quashing that subpoena to ensure that the rule "is to have any meaning" at all. Id.
Here, the government asserted in its motions in limine that Bergstein's tax returns are "direct evidence of Bergstein's charged crimes." (Dkt. 172 at 14). While a grand jury may properly investigate further criminal activity even when the resulting evidence relates to pending indictments, see United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994) ; United States v. Long, 697 F.Supp. 651, 658 (S.D.N.Y. 1988) (citing *583 United States v. Zarattini, 552 F.2d 753, 757 (7th Cir. 1977) ), it is the timing of a grand jury subpoena that "casts significant light on its purposes," among other surrounding circumstances, Simels, 767 F.2d at 29. The Gaynor Subpoena was issued more than a year after Bergstein's indictment and approximately two months before trial. The initial return date of the Gaynor Subpoena would have guaranteed that the subpoenaed materials were in the government's hands comfortably before the government was required to produce its trial exhibits. (Dkts. 162, 186 Ex. 1).
Gaynor made a reasonable request for a thirty-day extension of the return date of the Gaynor Subpoena, but the government refused to extend the date beyond January 5, 2018. (Id. ). The government also requested that the Court resolve the instant motion and request by January 5, 2018, which was also one day after Bergstein's reply brief was due. The Court does not find the government's ex parte submission to be persuasive in explaining why the grand jury-and not the prosecutors in this case-needs the subpoenaed materials on this abbreviated timeframe. The government represented to the Court ex parte that the IRS expanded the scope of the grand jury investigation to include certain tax issues in 2016 and that the subpoenaed materials are relevant to other active inquiries, but fails to adequately explain the big hurry on the eve of trial. The timing of the Gaynor Subpoena and the refusal to grant an adjournment points to the government's dominant purpose as an improper effort to obtain trial evidence. Neither Bergstein's awareness of the ongoing grand jury investigation nor his series of motions to quash makes the timing less suspicious. And, as noted, the government recently opposed Bergstein's ultimately unsuccessful request for a trial continuance. (Dkts. 184, 185, 187, 194). Taken together, these facts cast doubt on the legitimacy of the Gaynor Subpoena.
In order to accommodate the grand jury's legitimate need for the materials to further its investigation without allowing the government to improperly bolster its trial evidence, the Court extends the return date of the Gaynor Subpoena to no earlier than fourteen days after the discharge of the jury in Bergstein's case.
II. Review of Other Grand Jury Subpoenas.
Bergstein requests that the Court order disclosure of or review in camera "any other grand jury subpoenas that have been issued and/or served in the last 6 months that have resulted or could result in production of evidence that the government may use to prepare for or during the upcoming February 5, 2018 trial." (Dkt. 177 at 6). The Court relies on and applies the principles of law relating to such relief as set forth in the Order.
The Court declines to order disclosure of grand jury subpoenas to Bergstein for the reasons articulated in the Order. Bergstein has offered no additional facts or arguments beyond those the Court previously rejected in the Order that would cause it to find such relief necessary or prudent. However, the Court will require the government to make an ex parte , sealed submission by January 15, 2018 setting forth any subpoenas duces tecum issued by the grand jury since October 1, 2017 and disclosing any materials produced pursuant to such subpoenas. The government shall update the information through the conclusion of trial. The Court reserves the right to exclude any evidence at trial obtained through the improper use of a grand jury subpoena and grant such further relief as it deems appropriate.
III. Attorney-Client Privilege.
Bergstein also challenges the Gaynor Subpoena on the grounds that it seeks materials protected by the attorney-client privilege. Specifically, it seeks materials *584 in the hands of Gaynor allegedly relating to work performed by Hochman, Salkin, Rettig, Toscher & Perez, P.C. ("Hochman"), Bergstein's lawyer on tax matters. A party demonstrates standing to challenge a subpoena directed to a non-party by showing that he or she seeks to protect a personal privilege, right, or interest. See Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ; accord In re Grand Jury, 111 F.3d 1066, 1073 (3d Cir. 1997) (stating that "[i]t is well-established that a litigant may have sufficiently important, legally-cognizable interests in the materials or testimony sought by a grand jury subpoena issued to another person to give the litigant standing to challenge the validity of that subpoena" and collecting cases). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice," In re Cty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). Courts in this Circuit "construe the privilege narrowly because it renders relevant information undiscoverable." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (quoting id. ) (recognizing also the competing value of preserving the confidential relationship between attorney and client).
Bergstein does not argue that Gaynor, a tax advisory firm, is Bergstein's legal advisor. Instead, he alleges that United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), extends the application of the attorney-client privilege to Gaynor by virtue of an agreement between Gaynor and Bergstein's tax lawyer, Hochman. Kovel recognizes that the attorney-client privilege may extend to an attorney's agent when the agent's assistance is indispensable to the communications between attorney and client. Id. at 921. As an illustrative example, a foreign language interpreter would be indispensable to the communications between an attorney and client who speak different languages. Id. at 921-22.
Assuming that Bergstein has standing to challenge the Gaynor Subpoena on the basis of the attorney-client privilege, Bergstein has made an insufficient evidentiary showing that the privilege applies. Bergstein asserts that Gaynor was engaged by Hochman pursuant to an agreement that satisfies Kovel, but fails to evidentiary support for the claim. He further fails to establish any point on which that Gaynor was indispensable to an understanding of communications between Hochman and Bergstein. Instead, Bergstein makes conclusory arguments, which plainly do not satisfy his burden to invoke the privilege.
IV. Work Product Privilege.
Bergstein also challenges the Gaynor Subpoena on the grounds that it infringes upon protected work product. The Court relies on and applies the principles of law relating to the work product privilege as set forth in the Memorandum and Order. By way of further explanation, a party demonstrates standing to challenge a subpoena directed to a non-party by showing that he or she seeks to protect a personal privilege, right, or interest. See Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ; accord In re Grand Jury, 111 F.3d 1066, 1073 (3d Cir. 1997) (stating that "[i]t is well-established that a litigant may have sufficiently important, legally-cognizable interests in the materials or testimony sought by a grand jury subpoena issued to another person to give the litigant standing to challenge the validity of that subpoena" and collecting cases).
Assuming that Bergstein has standing to challenge the Gaynor Subpoena on the basis of the work product privilege, Bergstein has failed to show that any such protection exists for the materials sought by the Gaynor Subpoena. Bergstein has not alleged any facts that his representatives *585 prepared the subpoenaed materials "in anticipation of litigation" as described in In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183-84 (2d Cir. 2007), and related precedent. Bergstein's conclusory arguments are insufficient to invoke the privilege.
CONCLUSION
The Court extends the return date for compliance with the grand jury subpoena directed to Gaynor & Umanoff, LLP until no earlier than fourteen days after the discharge of the jury in Bergstein's trial. The government shall make the required ex parte sealed submission by January 15, 2018 and shall update the information through the conclusion of trial. Defendant Bergstein's motion and request are DENIED in remaining part. (Dkt. 176).
SO ORDERED.